Gregg et al. vs. Lee & Co. et als.

No. 9396.

N. GREGG ET AL. VS. LEE & CO. ET ALS.

A sale of a stock of goods in block with the adjuncts of a country-store wholly on credit and without security to an impecunious buyer has the appearance of a simulation, and when the seller has no property left and is largely insolvent, fraud is established and the sale will be annulled at the suit of the seller's creditors.

APPEAL from the Eleventh District Court, Parish of Natchitoches. *Pierson*, J.

*Watkins, Scarborough, & Carver,* and *Jack & Dismukes* for Plaintiffs and Appellees.

*J. F. Smith, Ponder & Porter,* and *A. V. Carter* for Defendants and Appellants.

The opinion of the Court was delivered by

MANNING, J. The plaintiffs are thirty five different commercial firms who had instituted separate suits against Lee & Co. for the sums respectively due them and had each obtained judgment thereon. These suits were provoked apparently by a pretended sale of Lee & Co. of their stock of goods (they were merchants at Robeline a railway station in Natchitoches Parish) made in block to one Warner together with all the accessories of the establishment such as waggons, buggies, hacks, three horses etc. The lots in the village of Robeline were also sold and houses thereon, some to Warner, others to a Doctor living in Texas who was brother-in-law to Johnson and Arnold members of the firm of Lee & Co. and all were recorded on October 2, 1884. The several suits followed immediately.

All these judgment-creditors bring the present action to annul this sale declaring it simulated and made expressly to defraud them, and alleging that Lee & Co. and the individuals composing that firm have thus denuded themselves of their entire property. The price of the sale was nine thousand dollars, all on credit, four notes having been given therefor due in 1885 and 1886. The plaintiffs obtained an injunction also forbidding the sale or removal of the personal property.

The testimony in support of the plaintiffs' charges is so complete that the lower judge had no hesitation in giving them a judgment, and we have none in affirming it.

Two experts were appointed to examine the books of Lee & Co. who have done their work very well, and they report that the first ledger shews liabilities amounting to over thirty seven thousand dollars while

the assets are less than five thousand. The second ledger shews liabilities for over sixteen thousand dollars and assets over ten thousand, so that the defendant firm were insolvent at the time of the sale. Indeed the members do not pretend otherwise, and two of them as witnesses swear that neither of the parties had any property left. The sale included all their possessions, but the experts report they can find no trace in the books of eleven hundred and fifty bales of cotton shipped by the firm to various parties between September 1, 1883 and October 1884. What these parties have done with the proceeds of sale of this cotton cannot be ascertained from the books, although the fact that they did ship that quantity is manifest from them, and this of itself is a badge of fraud. The aggregate of the plaintiffs' judgments is over twenty-five thousand dollars.

We shall not give even a resume of the evidence, every part of which tended to the same conclusion. The defendants had nothing to offer that could for an instant weaken its force. They seem not to have known that transactions such as this could be torn to pieces in a court of justice and their rottenness exposed to view. One of them said that nearly the whole of the first note had been paid by the purchaser of the stock of goods and he had no reason to believe the others would not be, while the testimony of this purchaser shews that he was cognisant of the whole scheme of fraud and lent himself to its consummation.

Judgment affirmed.